IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| JOSEPH WATKINS, | :: | HABEAS CORPUS |
| Petitioner, | :: | 28 U.S.C. § 2254 |
| | :: | |
| v. | :: | |
| | :: | |
| SCOTT CRICKMAR, *Warden for* | :: | CIVIL ACTION NO. |
| *Walker State Prison*, | :: | 4:12-CV-0298-HLM-WEJ |
| Respondent. | :: | |

## FINAL REPORT AND RECOMMENDATION

Petitioner, Joseph Watkins, has filed this counseled 28 U.S.C. § 2254 Petition

[1] to challenge his July 2, 2001 convictions in the Superior Court of Floyd County.

Before the Court are the Petition, respondent's Answer-Response [5], and petitioner's

Brief in Support of the Petition [6].  For the reasons stated below, the undersigned

**RECOMMENDS** that the Petition be **DENIED**.

## I.    PROCEDURAL HISTORY

After a Floyd County jury found petitioner guilty of felony murder, possession

of a firearm during the commission of a crime, and stalking, the trial court imposed a

total sentence of life plus five years imprisonment.  (Resp't Ex. 2a pt. 1 [7-4], at 64-68;

Ex. 2a pt. 2 [7-5], at 5-6.)  William O'Dell and Rex Abernathy represented petitioner

at trial. (<u>Id.</u> Ex. 2a pt. 2, at 24.) Petitioner filed an amended motion for a new trial, which the court denied. (<u>Id.</u> Ex. 2a pt. 2, at 7, 10-23.)

Represented by new counsel, Bobby Lee Cook and L. Branch S. Connelly, petitioner filed a direct appeal, arguing that the trial court erred in (1) admitting the hearsay testimony of Yvonne Agan pursuant to the necessity exception, (2) restricting the cross examination of Agan concerning the nature of the criminal charges pending against her, and (3) failing to overturn his conviction based on the prosecution's <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) violation. Br. of Appellant, <u>Watkins v. State</u>, No. S03A0034, 2002 WL 32334714, at *11-18 (Oct. 31, 2002). The Georgia Supreme Court summarized the evidence introduced at trial as follows:

> . . . [A]fter Brianne Scarbrough ended her relationship with [petitioner], he began threatening and harassing anyone who subsequently dated her. After [Isaac] Dawkins began seeing Scarbrough in the summer of 1999, numerous incidents occurred during which [petitioner] made threatening comments about Dawkins, attempted to get him to fight and followed Dawkins whenever he saw him, even when Dawkins was not with Scarbrough. A friend of [petitioner] told police that it was [petitioner's] "main goal every day" to find Dawkins. Evidence was presented from which the jury could find that as part of this threatening behavior [petitioner] with his friends shot Dawkins' dog between the eyes while it was chained in its pen in the victim's yard. Witness Yvonne Agan testified that in late November or December 1999 Dawkins arrived at her home, terrified, and related that while driving to his own home, [petitioner] had chased and fired a gun at him. Agan hid the victim's white Toyota truck and allowed him to sleep on her couch. Dawkins

2

declined to let Agan report the matter because he believed the incidents would stop since he had stopped dating Scarbrough.

Shortly after 7:00 p.m. on January 11, 2000, Dawkins was driving his truck north on Highway 27 after leaving his class at Floyd College. An occupant in a blue or green passenger car fired a shot through the truck's back window and hit Dawkins in the head. One eyewitness identified [petitioner] as the shooter. The truck veered off the highway, crossed the median, crashed into a side rail and after rolling over came to a stop with its rear end facing north. While modifications to the front of the truck made it identifiable as belonging to Dawkins, only the rear of the vehicle was visible to traffic. An eyewitness to the crash phoned 911 and an emergency vehicle was at the scene within three minutes of the call. [Petitioner's] cell phone records established that he was in the area at the time of the attack and when he arrived at his destination, he was overheard telling his new girlfriend that "his friend had just got killed." It required medical scans at the hospital to reveal the presence of the bullet in Dawkins' head; the victim was pronounced dead the following day.

The jury heard testimony that [petitioner] initially asked friends to give him an alibi for the time of the shooting. Thereafter in his comments to others, [petitioner] gave conflicting stories regarding what direction he was heading at the time of the shooting, with [petitioner] claiming that he saw the victim's truck on the side of the road and thought Dawkins had possibly had a flat tire. Later comments by [petitioner] reflected the fact that emergency vehicles were promptly at the crash scene, although [petitioner] had difficulty explaining how he recognized that the crashed truck was the victim's. [Petitioner] was later overheard in the local Home Depot parking lot bragging about shooting the victim and witnesses testified to comments made by [petitioner's] friends, who claimed to be in the car with [petitioner], indicating that [petitioner] shot the victim. After the shooting, [petitioner] told a witness who was dating Scarbrough that if the witness did not stop seeing her, "he [the witness] would end up just like Isaac [Dawkins]."

AO 72A
(Rev.8/82)

Watkins v. State, 581 S.E.2d 23, 25-26 (Ga. 2003) (final alteration in original).  On

May 19, 2003, the Georgia Supreme Court affirmed the trial court's judgment.  Id. at

28.  Petitioner did not petition the United States Supreme Court for a writ of certiorari.

On April 27, 2004, petitioner filed a counseled state habeas corpus petition in

the Superior Court of Gwinnett County, which was later transferred to Charlton

County.  (Resp't Ex. 1a [7-1]; Ex. 3 [7-18], at 1-2.)  In his state habeas petition, as

amended, petitioner argued that: (1) his counsel was ineffective for failing to introduce

cell phone tower evidence and distance and driving time evidence, allowing for road

construction and traffic, showing that he could not possibly have been at the murder

scene, and failing to object to inadmissible evidence; and (2) he is actually innocent.

(Id. Ex. 1a, at 4; Ex. 1b [7-2], at 5; Ex. 1c [7-3].)  After an October 29, 2009

evidentiary hearing, the state habeas court entered a written order denying the petition.

(Id. Ex. 2a pt. 1, at 1-55; Ex. 3.)  On October 15, 2012, the Georgia Supreme Court

denied petitioner a certificate of probable cause to appeal the denial of habeas corpus

relief.  (Id. Ex. 4 [7-19].)

On November 29, 2012, petitioner timely filed this counseled § 2254 Petition.

(Pet.)  As grounds for relief, petitioner argues that: (1) his counsel was ineffective for

failing to introduce cell phone tower evidence and distance and driving time evidence,

4

allowing for road construction and traffic, showing that he could not possibly have been at the murder scene; and (2) he is actually innocent. (Id. at 5; Pet'r Br. 15-25.) Specifically, petitioner maintains that the evidence introduced at trial showed that: (1) Wayne Benson, an eyewitness to the crash, called 911 at 7:19 p.m.; (2) petitioner made a call from his cell phone (number 506-1457) at 7:15 p.m., which was picked up by the Kingston cell tower; (3) according to expert testimony presented at the state habeas hearing, "the closest point to [the] scene of the shooting that a cell phone could connect to the Kingston tower was Collier Springs Road and there was no possibility of connecting to the Kingston tower between there and Floyd College, which included the murder scene;" (4) petitioner would have had to drive 8.2 miles between the last location his cell phone could have connected to the Kingston tower and the murder scene, traveling through four traffic lights and a section of highway that narrowed to one lane in each direction due to road construction; and (5) thus, it would have been impossible for petitioner to travel that distance in the four minutes that elapsed between his cell phone call and the 911 call. (Pet'r Br. 1-2, 4, 6-10.) Respondent argues, in pertinent part, that the state habeas court's decision is entitled to deference. (Resp't Br. [5-1] 7-10.) Petitioner replies that the state habeas court unreasonably applied the law to the facts of his case. (Pet'r Br. 13-25.)

## II.   **DISCUSSION**

### A.   **28 U.S.C. § 2254 Standards**

Under 28 U.S.C. § 2254, a federal court may issue a writ of habeas corpus on behalf of a person being held in custody pursuant to a judgment of a state court if that person is held in violation of his rights under federal law. 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief for claims previously adjudicated on the merits by a state court unless the state court adjudication resulted in a decision that (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

When applying § 2254(d), the federal court evaluating a habeas petition must first determine the applicable "'clearly established Federal law, as determined by the Supreme Court of the United States.'" Williams v. Taylor, 529 U.S. 362, 404-05 (2000) (quoting 28 U.S.C. § 2254(d)(1)); Van Poyck v. Fla. Dep't of Corrs., 290 F.3d 1318, 1322 n.4 (11th Cir. 2002) (per curiam) ("[I]n the context of a habeas review of a state court's decision–only Supreme Court precedent can clearly establish the law."). Next, the federal habeas court must ascertain whether the state court decision is

"contrary to" that clearly established federal law by determining if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or whether the state court reached a result different from the Supreme Court on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13. In other words, a state court decision is "contrary to" clearly established federal law only when it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Id. at 405; see also Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam) (holding that a state court decision is not contrary to federal law simply because it does not cite Supreme Court authority; the relevant inquiry is whether the reasoning or the result of the state decision contradicts that authority).

If the federal habeas court determines that the state court decision is not contrary to clearly established federal law, it must then determine whether the state court decision was an "unreasonable application" of clearly established federal law by determining whether the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case. Williams, 529 U.S. at 413. "For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011) (quoting

7

<u>Williams</u>, 529 U.S. at 410) (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Williams</u>, 529 U.S. at 411. Thus,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

<u>Harrington</u>, 131 S. Ct. at 786-87; <u>see</u> <u>also</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) ("Where ,[in a federal habeas corpus petition], the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable."). Additionally, the state court's determinations of factual issues are presumed correct. 28 U.S.C. § 2254(e)(1). A petitioner can overcome this presumption only by presenting "clear and convincing evidence" that the state court's findings of fact were erroneous. <u>Id.</u>

The undersigned has reviewed the pleadings and exhibits and finds that the record contains sufficient facts upon which the issues may be resolved. As petitioner has not made the showing required by 28 U.S.C. § 2254(e)(2) to entitle him to an

evidentiary hearing, the undersigned finds that no federal evidentiary hearing is warranted, and the case is now ready for disposition.

**B.      Ground One: Assistance of Counsel**

**1.      Clearly Established Federal Law**

In this Court's review of the state habeas court's denial of this ground, "the relevant clearly established law [for purposes of 28 U.S.C. § 2254(d)] derives from Strickland v. Washington, 466 U.S. 668 (1984), which provides the standard for inadequate assistance of counsel under the Sixth Amendment." Premo v. Moore, 131 S. Ct. 733, 737-38 (2011) (parallel citations omitted). "The pivotal question" before this Court "is whether the state court's application of the Strickland standard was unreasonable." Harrington, 131 S. Ct. at 785. "This is different from asking whether defense counsel's performance fell below Strickland's standard." Id.

The Strickland analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. First, a convicted defendant asserting a claim of ineffective assistance of counsel must show that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." Id. at 690. A court analyzing Strickland's first prong must be "highly

9

deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689; <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992) ("We also should always presume strongly that counsel's performance was reasonable and adequate."); <u>see also</u> <u>Harrington</u>, 131 S. Ct. at 788 ("'Surmounting <u>Strickland's</u> high bar is never an easy task.'" (quoting <u>Padilla v. Kentucky</u>, 130 S. Ct. 1473, 1485 (2010))).

In order to meet the second prong of <u>Strickland</u>, a petitioner must demonstrate that counsel's unreasonable acts or omissions prejudiced him. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." <u>Strickland</u>, 466 U.S. at 691. In order to demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

When this deferential <u>Strickland</u> standard is "combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether 'there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.'" <u>Johnson v. Sec'y, DOC</u>, 643 F.3d 907, 910-11 (11th Cir. 2011)

10

(quoting <u>Harrington</u>, 131 S. Ct. at 788). "Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." <u>Id.</u> at 911.

## 2. State Habeas Court's Decision

After correctly setting forth the <u>Strickland</u> standard, the state habeas court made the following findings:

> At the habeas hearing, Petitioner presented the testimony of Dr. Paul Steffes, who is a professor of electrical and computer engineering at Georgia Tech in Atlanta. Dr. Steffes asserted that he informed Petitioner's trial counsel that cell phone coverage maps and information supported Petitioner's defense theory, and he informed counsel of this opinion. Dr. Steffes claimed that he offered to perform more precise testing on cell phone tower coverage; however, according to Dr. Steffes, trial counsel did not accept this offer because there was insufficient time and resources for this. Dr. Steffes did perform these tests over seven years later.

> On cross-examination, Dr. Steffes admitted that he testified at Petitioner's criminal trial that Petitioner could not have made a cell phone call from the Floyd College area that hit off the Kingston Tower. This was consistent with the testimony he also provided to this Court.

> Bill O'Dell was Petitioner's co-counsel at trial. Part of the defense strategy was to show that Petitioner could not have covered the distances alleged by the State based on cell phone call evidence, and they had retained a former Georgia state trooper to testify about distances between key points near and at the murder scene. However, lead counsel Rex

11

Abernathy opted not to use the state trooper at trial, which was contrary to Mr. O'Dell's thinking.

Lead counsel Rex Abernathy testified via a deposition on November 17, 2009. Counsel stated that he spoke with an expert witness about the cell phone tower evidence, hired two investigators to look into the evidence, and drove the distances involved himself. Counsel believed the cell phone tower evidence was "pretty good" in supporting the defense's theory. However, counsel did travel with an investigator the distances involved and concluded that the state's theory could also be supported by the cell phone tower evidence. Counsel had strategic reasons for not putting forth certain evidence at Petitioner's trial regarding the distances traveled and the cell phone tower locations. He opted not to rely upon the investigator-timed driving evidence because it was too close to base the entire defense theory upon that alone. Counsel also opted to not put up evidence from Petitioner's sister about when Petitioner left her house because of certain discrepancies that would have called into question the defense's credibility. Counsel did put up Dr. Steffes as a witness because he thought he provided good evidence to support the defense's theory of the case and Dr. Steffes indicated that he was prepared to testify at Petitioner's trial. Counsel also believed that Petitioner's co-defendant, Mark Free, got a different trial result than Petitioner because Petitioner had a lengthy and troublesome past history with the victim, the cell phone at question near the crime scene belonged to Petitioner, and the evidence was more strongly stacked against Petitioner.

In Petitioner's criminal case, the record bears out that trial counsel did argue at trial that the state's theory was not born out by the cell phone tower evidence. This included putting forward evidence from Dr. Paul Steffes that Petitioner could not possibly have covered the distances alleged by the prosecution according to the cell phone towers.

AO 72A
(Rev.8/82)

(Resp't Ex. 3, at 5-9 (citations omitted).) These factual findings are supported by the record. (See id. Ex. 2a pt. 1, at 16, 18-22, 28-29, 31, 34-37, 42-44; Ex. 2b pt. 4 [7-12], at 178-83; Ex. 5 [8-1], at 1, 5, 7, 9-13.)

After concluding that counsel had presented evidence to the jury to show that "there was no way Petitioner could have been near the murder scene based on the cellular tower evidence," the state habeas court considered "whether counsel had a duty to put all evidence before the jury." (Resp't Ex. 3, at 10.) The court noted that "counsel did not use testimony from the investigator who drove the distances because counsel thought that the driving evidence was not as strong, and could even possibly support the state's case." (Id.) The court also pointed out that the jury had maps showing the distances involved and heard witness testimony that petitioner made a cell phone call that hit off the Kingston cell tower at 7:15 p.m. and that Mr. Benson called 911 at 7:19 p.m. (Id. at 10-11; see also id. Ex. 2a pt. 4 [7-7], at 20-22; Ex. 2a pt. 5 [7-8], at 74, 86-87; Ex. 2c pt. 1 [7-14], at 133, 135, 137.) The court found that counsel felt that similar transaction evidence showing petitioner's "deep-seated animosity" for the victim "was a far more significant factor" in the jury's guilty verdict than the cell phone evidence purportedly linking him to the scene of the crime, and counsel tried to

13

exclude the similar transaction evidence.  (Id. Ex. 3, at 11; see also id. Ex. 2a pt. 2, at 38-40, 43-77; Ex. 5, at 3.)  The court then concluded that:

> . . . [C]ounsel made a reasonable strategic decision when he opted not to put up the investigator about the time-distance evidence.  This evidence was indirectly put before the jury through exhibits and testimony, an expert witness already discussed the impossibility of Petitioner's cell phone being near the crime scene, and this evidence was not the major part of the prosecution's case that lead to Petitioner's convictions.  This Court concludes that counsel was effective and ground one provides no relief.

(Id. Ex. 3, at 11.)

As to petitioner's claim that the time-distance evidence was critical to refute Barry Mullinax's testimony that he saw petitioner shooting into the victim's truck on the night of the murder, the court found that "trial co-counsel instead sought to refute Mr. Mullinax's testimony by showing its factual impossibility."  (Resp't Ex.3, at 12.) Specifically, co-counsel

> characterized it as an "intriguing story," questioning why Mr. Mullinax did not call the police after seeing the shot fired, how he could have seen what he did while driving at a high rate of speed, why Mr. Mullinax cannot remember key details like who was in the car within him, why he did not stop for the victim after his vehicle crashed, and why he told no one else about the events he witnessed that night.

(Id.; see also id. Ex. 2a pt. 3 [7-6], at 127-30, 134-35, 137-38, 143-44, 146.)  The court, thus, concluded that "the time-[distance] evidence would merely have been cumulative

14

of other evidence that counsel used to discredit Mr. Mullinax's testimony." (Id. Ex. 3, at 12.)  The court further noted that Mr. Mullinax was not the only party who identified petitioner as the perpetrator.  (Id. at 12-13.)  The court then concluded that "[c]ounsel was not ineffective for failing to submit additional evidence to the jury regarding the unreliability of Mr. Mullinax's testimony that would have been cumulative of that already before the trial court."  (Id. at 13.)

### 3. **Discussion**

Petitioner maintains that trial counsel's failure "to present the most compelling evidence available" was unreasonable because the cell tower evidence, without the time-distance and other evidence, was insufficient to support petitioner's impossibility defense.  (Pet'r Br. 15-16, 20, 22-23.)  Petitioner asserts that the state habeas court unreasonably relied on counsel's testimony that the state's theory could also be supported by the cell tower evidence because counsel "never explained how [petitioner] could have driven the 8.2 miles involved in the time between relevant phone calls." (Id. at 17.) Petitioner contends that there is "no rational strategic reasons for not putting up evidence that supports your theory of defense and establishes the impossibility of your client being at the scene of the crime at the time it was committed." (Id. at 17-18.)

15

Dr. Steffes testified at trial that there was "no way" that petitioner's 7:15 p.m. cell phone call could have been made from the murder scene and connected with the Kingston tower. (Resp. Ex. 2b pt. 4, at 181, 183.) This testimony clearly supports petitioner's impossibility defense. Additionally, as the state habeas court noted, the jury had maps showing the distances involved and heard witness testimony regarding the relevant calls. (Id. Ex. 2a pt. 4, at 20-22; Ex. 2a pt. 5, at 74, 86-87; Ex. 2c pt. 1, at 133, 135, 137.) Thus, any additional evidence regarding the driving distances would have been cumulative. Although petitioner reiterates the argument he made to the state court that the time-distance evidence was critical to rebutting Mr. Mullinax's testimony, petitioner also admits that Mr. Mullinax "was thoroughly impeached," and he has not shown that counsel's failure to provide further impeachment evidence was unreasonable. (Pet'r Br. 20-21.)

On cross-examination, Dr. Steffes admitted that a cell phone call could possibly, under certain circumstances, connect to the Kingston tower at a point nearer the murder scene. (Resp't Ex. 2b pt. 5 [7-13], at 3, 6.) This explains counsel's testimony that the state's theory could also be supported by the cell tower evidence. (See id. Ex. 5, at 12-13.) As to Dr. Steffes's measurements taken after trial, which allegedly support his initial trial testimony that petitioner's cell phone call could not have

16

originated near the murder scene, counsel testified at the habeas hearing that Dr. Steffes never informed counsel that "he was not fully prepared to render any opinions in [the] case." (Id. at 13.) Because Dr. Steffes did not tell counsel that he needed more precise measurements in order to support his testimony and, in fact, told counsel that the cell tower coverage maps supported the defense theory, (see id. Ex. 2a pt. 1, at 33), counsel cannot be found ineffective for failing to have Dr. Steffes obtain additional measurements before trial.

In sum, counsel did present evidence supporting an impossibility defense, and petitioner has not shown that counsel's stated reasons for not presenting the additional evidence was unreasonable. The Eleventh Circuit has held that courts

> must avoid second-guessing counsel's performance: "[I]t does not follow that any counsel who takes an approach we would not have chosen is guilty of rendering ineffective assistance." Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.

Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (citation and footnote omitted). Having considered the parties' arguments and the record evidence, the undersigned cannot find that the state habeas court's conclusion that counsel was effective "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

17

disagreement." <u>Harrington</u>, 131 S. Ct. at 786-87. Thus, the state habeas court's rejection of this ground is entitled to deference pursuant to § 2254(d). <u>See id.</u> at 785; <u>Williams</u>, 529 U.S. at 404-05, 412-13.

### C.   <u>Ground Two: Actual Innocence</u>

In ground two, petitioner claims that the evidence discussed in ground one that counsel failed to present at trial demonstrates his actual innocence of the crimes for which he was convicted. (Pet'r Br. 23-25.) The state habeas court rejected this ground because "[a]n 'actual innocence' claim per se is not a basis for federal habeas corpus relief." (Resp't Ex. 3, at 16.) This decision is in accord with the United States Supreme Court's holding that a claim of actual innocence based on newly discovered evidence does not "state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400 (1993).[1] "This rule is grounded in the principle

---

[1] However, the Supreme Court also

assume[d] for the sake of argument . . . , that in a capital case a truly persuasive demonstration of "actual innocence" made after trial would render <u>the execution of a defendant</u> unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.

<u>Herrera</u>, 506 U.S. at 417 (emphasis added). Even if this language permits a freestanding actual innocence claim, its purpose is to "prevent the execution of an

18

that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." <u>Id.</u> The undersigned therefore finds that the state court's rejection of ground two is entitled to deference pursuant to § 2254(d). <u>See</u> <u>Harrington</u>, 131 S. Ct. at 785; <u>Williams</u>, 529 U.S. at 404-05, 412-13.

## III.   CERTIFICATE OF APPEALABILITY

Under Rule 22(b)(1) of the Federal Rules of Appellate Procedure, "the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." 28 U.S.C. foll. §2254, Rule 11. Moreover, pursuant to 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter,

---

innocent person" and, thus, does not apply in this case. <u>Brown v. Tucker</u>, No. 5:10cv160/MCR/EMT, 2011 WL 5082109, at *7 (N.D. Fla. Sept. 6, 2011), <u>report and recommendation adopted by</u>, 2011 WL 5085081 (Oct. 25, 2011). Moreover, the undersigned finds that the evidence presented by petitioner does not meet the "extraordinarily high" threshold showing required to support such a claim. <u>See</u> <u>Herrera</u>, 506 U.S. at 417.

agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted).

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, . . . a certificate of appealability should issue only when the prisoner shows both that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

<u>Jimenez v. Quarterman</u>, 555 U.S. 113, 118 n.3 (2009) (internal quotation marks omitted). Based on the foregoing discussion of petitioner's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason; thus, the Court should deny a certificate of appealability.

## IV.    <u>CONCLUSION</u>

Accordingly, the undersigned **RECOMMENDS** that the Petition [1] be **DENIED** and that the Court **DECLINE** to issue a certificate of appealability.

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

AO 72A
(Rev.8/82)

**SO RECOMMENDED**, this 11th day of February, 2013.


_____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)